UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JASON ZEIGLER, Individually and in his capacity
as Court Appointed Attorney for Indigent Citizens in
the County of Onondaga together with all of those
similarly situated and JEFF WITKOWSKI,
Individually as well as the representative of all of
those similarly situated,

                                        Plaintiffs,

          -v-                                          5:11-cv-037

THE STATE OF NEW YORK; THE OFFICE OF
COURT ADMINISTRATION OF THE UNIFIED
COURT SYSTEM; HON. JAMES TORMEY,
Individually and in his official capacity as District
Administrative Judge of the Fifth Judicial District;
and ONONDAGA COUNTY,

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

OFFICE OF JEFFREY R. PARRY              JEFFREY R. PARRY, ESQ.
Attorney for Plaintiffs
124 Woodspath Road
Liverpool, NY 13090

HON. ERIC T. SCHNEIDERMAN              C. HARRIS DAGUE, ESQ.
Attorney General for the State of New York      Ass't Attorney General
Attorney for Defendants State of New York,
     Office of Court Administration of the Unified
     Court System, and Hon. James Tormey
The Capitol
Albany, NY 12224

ONONDAGA COUNTY DEPARTMENT OF LAW   CAROL L. RHINEHART  ESQ.
Attorney for Defendant Onondaga County
John H. Mulroy Civic Center
421 Montgomery Street
10th Floor
Syracuse, NY 13202

NEW YORK CIVIL LIBERTIES UNION               COREY L. STOUGHTON, ESQ.
Attorney for Amici Curiae Hurrell-Harring Class
125 Broad Street
19th Floor
New York, NY 10004


DAVID N. HURD
United States District Judge


## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiffs, a putative class of appointed attorneys for indigent criminal defendants in Onondaga County, New York, represented by plaintiff Jason Zeigler ("Zeigler") (the "attorney class"), and a putative class of indigent criminal defendants in local courts within Onondaga County, New York, represented by Jeff Witkowski ("Witkowski") (the "criminal defendant class") bring this action for money damages and declaratory relief against defendants the State of New York (the "State"); the Office of Court Administration of the Unified Court System ("OCA"); Hon. James Tormey ("Judge Tormey"), individually and in his official capacity as District Administrative Judge of the Fifth Judicial District (collectively the "State defendants"); and Onondaga County (the "County") (the State defendants and the County collectively "defendants") asserting claims under the United States Constitution pursuant to 42 U.S.C. § 1983, and state law.

The State defendants and the County separately moved for judgment on the pleadings dismissing the complaint pursuant to Federal Rule of Civil Procedure 12(c) ("Rule __"). Plaintiffs opposed and the State defendants replied. Finally, the "Hurrell-Harring

Class," as Amici Curiae, submitted a brief in opposition to the County's motion.  Oral

argument was heard on Tuesday, July 17, 2012 in Utica, New York.  Decision was reserved.[1]

## II.  BACKGROUND

The facts upon which this action is based are summarized briefly below.  Facts set

forth in the amended complaint will be taken as true for the purpose of these motions.

New York County Law Article 18-B was enacted following the United States Supreme

Court's decision in Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792 (1963) (holding that

the Sixth and Fourteenth Amendments require that states provide counsel to indigent

criminal defendants charged with a felony offense) and the New York Court of Appeals'

decision in People v. Witenski, 15 N.Y.2d 392 (1965) (finding that court must inform

defendants of right to assignment of counsel).  Article 18-B was enacted to put into operation

a plan that would provide both representation to indigent persons charged with a crime and a

means to compensate the attorneys assigned to represent those individuals.

Article 18-B requires each county or municipality to have "a plan for providing counsel

to persons charged with a crime [for which a sentence of imprisonment is authorized] . . .

who are financially unable to obtain counsel."  N.Y. County Law § 722.  Section 722 provides

four options for such a plan:  (1) an office of a public defender; (2) a private legal aid society

or bureau organized and operating for the provision of indigent defense counsel; (3) a plan of

---

[1]  In their motion papers and at oral argument, the parties extensively discussed Roulan v. County of Onondaga.  At the time the instant motions were returnable, the Roulan plaintiff's appeal  of the Appellate Division, Fourth Department's decision was pending in front of the New York Court of Appeals. As explained below, the Fourth Department ruled as to various aspects of the Plan including the validity of certain provisions affecting both attorneys working pursuant to the Plan and indigent criminal defendants receiving legal services pursuant to the Plan.  Therefore, the New York Court of Appeals' consideration of the Fourth Department's decision was integral to this case.  The New York Court of Appeals rendered a decision on that appeal on April 30, 2013.  Consideration of this matter by the undersigned followed.

a bar association utilizing private attorneys on rotating panels; or (4) a plan using a combination of any of these options.  Id. § 722(1)–(4).

The County has contracted with the Onondaga County Bar Association Assigned Counsel Program, Inc. ("ACP") to administer the bar association plan option.  Ziegler Aff., June 8, 2012, Ex. B Part 1 (the "contract").  The bar association plan is set out in ACP's "Handbook of Policies, Rules and Procedures" (the "Plan"), which calls for panels of attorneys who have agreed to its terms.  Ziegler Aff., June 8, 2012, Ex. B Parts 2–3.  Various courts throughout the County are charged with appointing attorneys from these panels to represent indigent criminal defendants who qualify for free legal services.  The panel attorneys then submit vouchers for their services to ACP, which reviews the vouchers and forwards them to the appropriate trial court judge for approval.

State law sets compensation rates for attorneys practicing pursuant to Article 18-B plans and compensation of attorneys assigned pursuant to the Plan is fixed by the trial court judge in accordance with rates established by the New York Legislature.  N.Y. County Law § 722-b.  While courts maintain the inherent power to assign any particular counsel to an indigent criminal defendant, only those attorneys appointed pursuant to the Plan are compensated by the County.  In other words, a court may not order that an attorney not assigned pursuant to the Plan be compensated.

Zeigler and those similarly situated are attorneys licensed to practice in New York who serve pursuant to the Plan to provide legal representation to indigent criminal defendants in the County.[2]  Ziegler contends he is a party to a contract with the County, pursuant to which

---

[2]  There are approximately 150 other attorneys in the County serving on the ACP panel of assigned attorneys.

all participating ACP attorneys must agree to in order to serve on the panel.  Witkowski and

those similarly situated are or were indigent criminal defendants who have been assigned

legal representation in the County pursuant to the Plan.[3]  Plaintiffs assert that defendants

created, oversee, and control the Plan.

Plaintiffs argue the Plan suffers from systemic deficiencies like inadequate

compensation, lack of resources, lack of representation, and overly stringent eligibility

policies.  Because of these deficiencies, plaintiffs allege indigent criminal defendants

confront critical stages of criminal proceedings including arraignment, without counsel, or

with counsel who fail to meaningfully represent them.  Plaintiffs specifically attack several

aspects of the Plan.

First, they allege they are deprived of the right to counsel by defendants'

implementation of the Plan via two distinct arraignment methods, each of which is

unconstitutional.  The first method is employed in city courts in Syracuse, New York.

Plaintiffs allege Judge Tormey instituted a process by which "arraigning attorneys" are

assigned to a criminal defendant only for the purpose of arraignment; the attorney withdraws

from the client immediately after the arraignment is completed.  According to Witkowski, this

is unconstitutional and deprives the criminal defendant class of their right to counsel because

the "arraigning attorney" does not have time to learn about the case, meet the client, or

engage in meaningful motion practice, thus the representation is inadequate and falls below

accepted standards contemplated by the Sixth Amendment.  Plaintiffs also take issue with

the post-arraignment process in city courts.  Following the withdrawal of the "arraigning

---

[3]  Witkowski alleges he is one of thousands of criminal defendants within the County entitled to
legal services from ACP.

attorney," a panel attorney is provisionally assigned but his/her work may not commence until the defendant is deemed to qualify for legal services by the County, a process plaintiffs claim takes too long, is too stringent, and should be performed by a court.  According to plaintiffs, during the qualification process, the defendant is without representation in violation of the Sixth Amendment.

The second allegedly unconstitutional arraignment method occurs in county courts. There, defendants are arraigned with no counsel at all (the prosecutor is not present either). As a result, defendants do not receive counsel prior to the grand jury indictment process, in violation of their Fifth Amendment rights.

Plaintiffs next describe a "core attorney" system within the city courts in which groups of lawyers are devoted exclusively to one judge for purposes of assignments.  Plaintiffs argue this system is illegal because the law requires rotation among attorneys.  Further, plaintiffs contend the system is unconstitutional because it favors attorneys who expedite cases, and disfavors those who zealously represent their clients, like Zeigler.  The pressure to minimize adequate representation, in conjunction with pressure to adjourn court appearances, results in additional Sixth Amendment violations.

Finally, plaintiffs take issue with the compensation of Plan attorneys.  In addition to extremely low pay rates, plaintiffs contend that the review and payment of attorney submitted vouchers actually deters attorneys from providing necessary representation because the County is slow to process vouchers and does not pay for certain legal services, in violation of the law.

## III.  **DISCUSSION**

In summary, plaintiffs claim that the Plan violates the constitutional rights of participating attorneys and indigent criminal defendants and that defendants breached certain contractual obligations concerning the Plan.  They specifically allege the following causes of action in the amended complaint:  (1) deprivation of rights under the Sixth and Fourteenth Amendments pursuant to § 1983, relating to the arraignment processes and the other ways in which the Plan denies the right to counsel;[4] (2) deprivation of rights under the First, Fifth, Sixth, and Fourteenth Amendments pursuant to § 1983, alleging defendants retaliated against plaintiffs for exercising their Sixth Amendment rights; specifically that attorneys who protest the Plan, both verbally and also through their proper representation of defendants, are given unfavorable assignments and review of their vouchers is intentionally slow; (3) deprivation of rights under the Fourteenth Amendment pursuant to § 1983, alleging that defendants' actions in delaying and reducing the Ziegler plaintiffs' vouchers constitute an illegal taking without due process and deprive the Witkowski plaintiffs access to the courts[5]; and (4) breach of contract relating to the assignment and compensation of attorneys under the Plan.

The State defendants argue they are entitled to judgment on the pleadings because: (1) the attorney class does not have standing to assert constitutional claims; (2) the State, OCA, and Judge Tormey in his official capacity are entitled to sovereign immunity under the

---

[4]  This cause of action also alleges a <u>Monell</u> claim and asserts that the County's constitutional violations are the result of a custom, policy, or practice; that the County failed to prevent or correct the constitutional violations; and that the County failed to train their employees not to engage in such unconstitutional conduct.

[5]  The amended complaint also includes allegations suggesting due process and equal protection claims.

Eleventh Amendment; (3) Judge Tormey enjoys absolute judicial immunity from suit; (4) the Younger doctrine requires abstention on the criminal defendant class's claims; and (5) the attorney class's claims are barred by res judicata.

The County argues it is entitled to judgment on the pleadings because:  (1) plaintiffs fail to state claims of equal protection violations, retaliation, and due process violations; (2) plaintiffs fail to sufficiently allege a Monell claim based on a County policy; (3) plaintiffs fail to name a necessary party with respect to the breach of contract claim; (4) the attorney class's claims are barred by res judicata; and (5) the attorney class does not have standing to assert constitutional claims.

It should be noted that the bulk of plaintiffs' allegations are leveled against all defendants collectively, making it difficult to discern how plaintiffs allege each individual defendant violated specific constitutional or contractual rights.  Likewise, the amended complaint does not distinguish whether each claim is asserted on behalf of the attorney class, the criminal defendant class, or both.  It is clear that the fourth cause of action is brought solely by the attorney class.  For purposes of these motions, it will be assumed that the first, second, and third causes of action are asserted on behalf of both classes of plaintiffs.

### A.  Judgment on the Pleadings—Legal Standard

The standard for granting a Rule 12(c) judgment on the pleadings is identical to that of a 12(b)(6) motion to dismiss for failure to state a claim.  Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).  To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  Although a complaint

need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2)), more than mere conclusions are required.  Indeed, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940 (2009).

When considering a motion to dismiss, the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiffs' favor.  Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007).  Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims.  See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring only enough facts to state a claim to relief that is plausible on its face).  The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (internal quotations omitted).

**B.  State Defendants' Motion for Judgment on the Pleadings**

**1.  Sovereign Immunity**:  All claims against State defendants

The State defendants argue that the State, OCA, and Judge Tormey in his official capacity are entitled to immunity under the Eleventh Amendment on all claims.

It is well-established that the Eleventh Amendment bars actions against states and state agencies.  Gollomp v. Spitzer, 568 F.3d 355, 365–66 (2d Cir. 2009).  Eleventh Amendment immunity precludes a plaintiff from seeking any relief against states and state agencies—including monetary and injunctive relief.  Cory v. White, 457 U.S. 85, 90–91, 102 S. Ct. 2325, 2329 (1982).  This immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  Gollomp, 568 F.3d

at 366 (internal quotations omitted).  Specifically, the New York State Unified Court System has been deemed an arm of New York.  Id. at 368.  It follows that the Office of Court Administration of the Unified Court System is an arm of New York.  Trivedi v. N.Y.S. Unified Court Sys. Office of Court Admin., 818 F. Supp. 2d 712, 727 (S.D.N.Y. 2011) ("The OCA is a government entity that, pursuant to sovereign immunity, is not amenable to suit.").

The Eleventh Amendment also bars claims for money damages against state officials acting in their official capacities.  Kentucky v. Graham, 473 U.S. 159, 167–68, 105 S. Ct. 3099, 3106 (1985).  However, suits against state officials in their official capacities for prospective injunctive relief to stop ongoing violations of federal law are permitted.  Ex parte Young, 209 U.S. 123, 159–60, 28 S. Ct. 441, 453–54 (1908).  "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645, 122 S. Ct. 1753, 1760 (2002) (internal quotations omitted).

Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  Gollomp, 568 F.3d at 365–66.  It is well-settled that Congress did not abrogate states' immunity through § 1983.  Quern v. Jordan, 440 U.S. 332, 343–45, 99 S. Ct. 1139, 1146–47 (1979); Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990).

Accordingly, the State and OCA are entitled to Eleventh Amendment immunity, and all claims against them will be dismissed.  All claims against Judge Tormey in his official capacity for money damages will also be dismissed as they are barred by the Eleventh

Amendment.  However, claims against Judge Tormey in his official capacity for prospective injunctive relief may proceed, subject to the judicial immunity analysis below, because plaintiffs allege facts suggesting he has a connection with the enforcement of the acts allegedly in continued violation of federal law, and thus the exception created by Ex parte Young applies.

    **2.  <u>Judicial Immunity</u>**:  All claims against Judge Tormey

    Judge Tormey argues he is entitled to judicial immunity from suit and all claims against him must be dismissed.  Following the sovereign immunity analysis above, the only remaining claims against Judge Tormey are those for money damages in his individual capacity, and claims for prospective injunctive relief in both his individual and official capacities.

    It is well-established that judges enjoy "absolute immunity from suits for money damages for their judicial actions."  <u>Bliven v. Hunt</u>, 579 F.3d 204, 209 (2d Cir. 2009).  Moreover, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, [prospective] injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983; <u>see also</u> <u>Jacobs v. Mostow</u>, 271 F. App'x 85, 88 (2d Cir. Mar. 27, 2008) (summary order) (citing <u>Montero v. Travis</u>, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam)).  Plaintiffs do not allege this is the case.  Indeed, plaintiffs seek a declaration that "defendants' conduct complained of herein [is] a violation of plaintiff's rights as secured by the First, Sixth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983."  Am. Compl., ¶ 151.  Since a declaratory decree was not violated and declaratory relief is

available, plaintiffs' attempt to seek prospective injunctive relief from Judge Tormey in any capacity is prohibited.

Allegations of "bad faith or malice" cannot overcome judicial immunity.  Bliven, 579 F.3d at 209.  Indeed, "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge," and "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority."  Stump v. Sparkman, 435 U.S. 349, 356, 98 S. Ct. 1099, 1105 (1978).  There are only two ways to overcome judicial immunity.  "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  Mireles v. Waco, 502 U.S. 9, 11–12, 112 S. Ct. 286, 288 (1991) (internal citations omitted).

When determining whether an action is judicial, courts are instructed "to take a functional approach" and consider whether the action is one expected to normally be performed by a judge.  Bliven, 579 F.3d at 209.  Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature."  Id. at 210.  Even "informal and ex parte" proceedings that are "otherwise within a judge's lawful jurisdiction" are considered judicial.  Forrester v. White, 484 U.S. 219, 227, 108 S. Ct. 538, 544 (1988).  Administrative actions such as terminating a court employee, compiling general jury lists, and promulgating an attorney code of conduct do not fall within the range of judicial actions protected by judicial immunity.  Bliven, 579 F.3d at 210.  However, administrative functions such as "[t]he assignment of cases and issuance of consolidation orders are judicial functions normally performed by, and statutorily reserved to [Chief Judges]" and thus are

- 12 -

protected by judicial immunity.  Parent v. New York, 786 F. Supp. 2d 516, 532 (N.D.N.Y. 2011), aff'd, 485 F. App'x 500 (2d Cir. June 18, 2012) (summary order), cert. denied, 133 S. Ct. 652 (2012).

When considering if a judge acted in the complete absence of jurisdiction, courts must ask (1) whether a reasonable judge would have thought jurisdiction was proper and (2) if that particular judge knew or had reason to know of such jurisdictional defect.  See Maestri v. Jutkofsky, 860 F.2d 50, 53 (2d Cir. 1988) (distinguishing between a judge who acts in excess of jurisdiction and one who acts in clear absence of all jurisdiction).

New York County Law section 722-b specifically delegates to the trial court judge the authority to decide compensation for attorneys assigned pursuant to the Plan.  According to plaintiffs, the Administrative Judge may only become involved in appellate review, which may occur if the County contests the fee set by a trial court judge in excess of the statutory cap. N.Y. County Law § 722-b.  That fee may then be reviewed by the Administrative Judge for an abuse of discretion.  Beyond this function, the Administrative Judge plays no function in attorney assignment or compensation.  Yet, plaintiffs allege that Judge Tormey has involved himself extensively in the Plan's administration, and engaged in acts which are wholly administrative in nature.  They also allege, on certain occasions, that Judge Tormey acted in the complete absence of jurisdiction.

Plaintiffs allege Judge Tormey authorized the two allegedly unconstitutional arraignment methods occurring in city and county courts; he permits "core attorneys" to work exclusively for specific city court judges although the Plan requires rotation; he authorized the contract with the County, which assigned attorneys must serve pursuant to in order to be offered assignments; and he and the other defendants put into place a non-judicial system of

review of the attorney class members' bills designed to deter the attorney class from providing necessary representation.  They also allege Judge Tormey's involvement in the review of vouchers (and other matters such as attorney qualifications and the method of assignment) is without jurisdiction because section 722-b specifically designates to trial court judges the authority to decide attorney compensation.  Those allegations, combined with allegations that Judge Tormey took actions relating to the Plan that were purely administrative in nature, see e.g. Mitchell v. Fishbein, 377 F.3d 157, 172–74 (2d Cir. 2004) (ruling that the screening committee responsible for compiling a list of attorneys to be members of an 18–B panel performed functions that were administrative and legislative, rather than judicial), are sufficient to deny Judge Tormey's request for judicial immunity at this time.

Because plaintiffs have sufficiently alleged nonjudicial actions by Judge Tormey, as well as actions, though judicial in nature, taken in the complete absence of all jurisdiction, judicial immunity will be denied as to claims for money damages against him in his individual capacity.

To summarize, the only remaining defendants subject to the below analyses are Judge Tormey in his individual capacity (for money damages only) and the County.

**3.  Standing**:  First and Third claims by attorney class

The State defendants argue subject-matter jurisdiction is lacking over the Zeigler class's constitutional claims.  They contend the attorney class does not have standing to assert Fifth and Sixth Amendment violations based on their clients' deprivation of rights.[6]

---

[6]  Although not specified as such, these arguments would go toward the first and third claims.

Article III of the United States Constitution limits the jurisdiction of federal courts to the resolution of "Cases" and "Controversies."  U.S. Const. Art. III, § 2, cl. 1.  "Standing 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'"  Cent. States Se. and Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992)).  It is well-established that "[t]o meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant" and can be redressed by a favorable decision.  Lamar Adver. of Penn, LLC v. Town of Orchard Park, 356 F.3d 365, 373 (2d Cir. 2004) (internal quotations omitted).

These standing requirements apply with no less force to class actions.  "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."  O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct. 669, 675 (1974).  Finally, as the party invoking federal jurisdiction, plaintiffs bear the burden of establishing that each class has suffered a concrete injury, or is on the verge of suffering one.  Merck-Medco Managed Care, 433 F.3d at 198.

### a. First Claim

Ziegler contends he has satisfied the injury requirement with respect to the first claim because the rights of criminal defendants are inextricably intertwined with those of defense counsel.  The amended complaint, however, with respect to the first cause of action, is devoid of any actual or threatened injury to Ziegler that is traceable to the alleged unlawful conduct.  Instead, the attorney class attempts to assert Sixth Amendment claims based on

rights enjoyed by others, namely the criminal defendant class.  Ziegler, and the attorney class, cannot seek redress for injuries done to others.  See e.g., N.Y. Cnty. Lawyers' Ass'n v. Bloomberg, No. 10 CV. 5035, 2011 WL 4444185, at *4–8 (S.D.N.Y. Sept. 23, 2011) (dismissing for lack of standing a challenge brought by not-for-profit association of attorneys on behalf of their indigent criminal defendant clients seeking revision of New York City's indigent criminal defense system); Roulan v. Cnty. of Onondaga, 90 A.D.3d 1617, 1621 (N.Y. App. Div. 4th Dep't 2011) ("To the extent that plaintiff asserts the claims of criminal defendants concerning deprivation of the right to counsel under Gideon (372 U.S. 335), plaintiff has no standing to assert those claims."), aff'd as modified, ___ N.E.2d ___, 2013 WL 1798582 (N.Y. Apr. 30, 2013) (mem.).  Because Ziegler does not have standing to assert claims under the Sixth Amendment, the first cause of action will be dismissed as to the attorney class.

     **b. <u>Third Claim</u>**

With respect to the third cause of action, Ziegler contends he has suffered injury in fact by virtue of the Takings Clause of the Fifth Amendment.  However, it is entirely unclear what plaintiffs allege in this claim.  In the amended complaint, plaintiffs combine into one claim notions of both procedural and substantive due process under the Fourteenth Amendment, while also alleging a violation of the Takings Clause of the Fifth Amendment.

Specifically, the attorney class alleges that defendants' procedure for reviewing payment vouchers is improper and there is a lack of notice when those vouchers are reduced or denied.  See Am. Compl. ¶¶ 104–118.  These allegations suggest a procedural due process claim.  However, plaintiffs also allege "Mr. Ziegler's statutorily guaranteed compensation is subject to arbitrary and capricious takings without due process."  Id. ¶ 31.

This suggests a claim for substantive due process, which "prohibits government actors from interfering with cognizable property interests in such an arbitrary and capricious way as 'to shock the contemporary conscience.'"  Manza v. Newhard, 470 F. App'x 6, 8 (2d Cir. Mar. 20, 2012) (summary order) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8, 118 S. Ct. 1708, 1717 n.8 (1998)).

Plaintiffs also allege that "[t]he conduct and actions of defendants constitute an illegal and continual taking from all of the plaintiffs."  Am. Compl. ¶ 145.  The Takings Clause prohibits state and federal governments from taking private property for public use without just compensation.  See U.S. Const. amend. V; Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536, 125 S. Ct. 2074, 2080 (2005).  Finally, plaintiffs' opposition to defendants' motions appears to argue that defendants violated the attorney class's equal protection rights under the Fourteenth Amendment.

The State defendants' only argument for dismissal of this cause of action is based on a lack of standing under the Takings Clause, pursuant to a line of cases holding that government action does not constitute a constitutional taking where there is "no legal compulsion" or mandate to provide the service at issue.  See e.g., Garelick v. Sullivan, 987 F.2d 913, 916 (2d Cir. 1993).  This argument was raised for the first time in the State defendants' reply brief and thus it will not be considered.  In re Harris, 464 F.3d 263, 268 n.3 (2d Cir. 2006) ("We generally do not consider issues raised in a reply brief for the first time, because if an appellant raises a new argument in a reply brief an appellee may not have an adequate opportunity to respond to it.") (internal quotations and citation omitted)).

Accordingly, dismissal is appropriate of the attorney class's first claim because Ziegler has no standing to bring the claim.  However, the third claim will remain, subject to the below

analyses, because the State defendants have not demonstrated that the attorney class does not have standing to assert the myriad of claims asserted in that cause of action.

    4. <u>**Abstention**</u>: Claims by criminal defendant class

    The State defendants argue the court should abstain from exercising jurisdiction over the criminal defendant class's claims because the challenge to the Plan and constitutional claims asserted by the criminal defendant class here are the subject of a pending class action venued in New York State Supreme Court, Albany County entitled <u>Hurrell-Harring v. New York</u>.

    a. <u>**State court action**</u>

    In <u>Hurrell-Harring</u>, a number of indigent criminal defendants brought suit against the State, the Governor, the County, and various other counties, challenging the sufficiency of the assigned counsel program employed throughout the State, including in the County. Those plaintiffs challenge, <u>inter alia</u>, the arraignment procedures, the client eligibility criteria, a lack of independence from the judiciary, and the adequacy of resources provided to assigned counsel.  They seek a declaration that the State's assigned counsel system "is systemically deficient and presents a grave and unacceptable risk that indigent criminal defendants are being or will be denied their constitutional right to meaningful and effective assistance of counsel."  <u>Hurrell-Harring v. New York</u>, 66 A.D.3d 84, 85 (N.Y. App. Div. 3d Dep't 2009), <u>aff'd as modified</u>, 15 N.Y.3d 8 (2010), <u>remanded to</u> 75 A.D.3d 667 (N.Y. App. Div. 3d Dep't 2010).  Plaintiffs also seek an injunction "requiring defendants to provide a system that is consistent with those guarantees."  <u>Id</u>.

    Initially, the Supreme Court, Albany County conditionally denied the State's motion to dismiss for, <u>inter alia</u>, failure to state a claim.  On appeal, the Appellate Division, Third

Department found that plaintiffs failed to state a justiciable claim based on ineffective assistance of counsel under Strickland v Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984) and reversed.  Hurrell-Harring, 66 A.D.3d at 85–92.  The Third Department concluded that plaintiffs merely raised general complaints as to the funding and administration of the system, which do not necessarily implicate the constitutional right to counsel.  Id.

On appeal, the Court of Appeals modified the Third Department's order. Hurrell-Harring v. New York, 15 N.Y.3d 8 (2010).  The Court agreed that plaintiffs failed to state a justiciable claim based on ineffective assistance of counsel under Strickland, but found they stated a justiciable claim for constructive denial of the right to counsel by reason of insufficient compliance with Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792 (1963) because the complaint alleged that some of the plaintiffs were altogether without representation at critical stages of the proceedings.  Hurrell-Harring, 15 N.Y.3d at 19–20. The Court specifically concluded that arraignment, which routinely affects a defendant's liberty and ability to defend against the charges, was a critical stage of a criminal proceeding for purposes of the right to counsel, even if a guilty plea was not elicited at the arraignment. Id. at 20–21.  The Court reinstated the cause of action for denial of the right to counsel and remanded for the Third Department to consider issues raised but not determined on appeal to that court.

Meanwhile, the plaintiffs moved for class certification, seeking certification of:

All indigent persons who have or will have criminal felony, misdemeanor, or lesser charges pending against them in New York state courts in Onondaga, Ontario, Schuyler, Suffolk and Washington counties who are entitled to rely on the government of New York to provide them with meaningful and effective defense counsel.

The Supreme Court, Albany County denied that motion.  On appeal, the Third Department

reversed and granted plaintiffs' motion for class certification.  Hurrell-Harring v. New York, 81

A.D.3d 69 (N.Y. App. Div. 3d Dep't 2011).  The Hurrell-Harring case is now proceeding as a

certified class action in the State court system.

      **b.  Younger Doctrine**

      The Supreme Court has "often acknowledged that federal courts have a strict duty to

exercise the jurisdiction that is conferred upon them by Congress."  Quackenbush v. Allstate

Ins. Co., 517 U.S. 706, 716, 116 S. Ct. 1712, 1720 (1996).  However, this duty is not without

exceptions.  Id.  Federal courts may decline to exercise jurisdiction in a select few

"exceptional circumstances."  Id. at 716, 116 S. Ct. at 1721 (internal quotations omitted).

      The Supreme Court carved out one such exception in Younger v. Harris, 401 U.S. 37,

91 S. Ct. 746 (1971).  Under Younger, federal courts—in the interest of comity, deference,

and judicial economy—"must abstain from enjoining pending state court criminal

prosecutions and allow state courts to resolve pending matters within their jurisdiction."

Washington v. Cnty. of Rockland, 373 F.3d 310, 318 (2d Cir. 2004).  This abstention doctrine

has been extended to state civil and administrative proceedings.  Id.

      Abstaining from the exercise of jurisdiction is mandatory where:  "1) there is an

ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has

an avenue open for review of constitutional claims in the state court."  Liberty Mut. Ins. Co. v.

Hurlbut, 585 F.3d 639, 647 (2d Cir. 2009) (internal quotations omitted).  The doctrine also

applies to claims for declaratory relief.  See Hansel v. Town Court, 56 F.3d 391, 393 (2d Cir.

1995) (citing Samuels v. Mackell, 401 U.S. 66, 73, 91 S. Ct. 764, 768 (1971)).

Notably, federal courts have drawn a distinction between state actions that are "coercive" and those that are "remedial" in nature, applying the Younger doctrine to coercive actions only.  See N.Y. State Corr. Officers & Police Benevolent Ass'n, Inc. v. New York, __ F. Supp. 2d __, 2012 WL 6019572, at *14 (N.D.N.Y. 2012) (D'Agostino, J.); Donohue v. Mangano, 886 F. Supp. 2d 126, 144–47 (E.D.N.Y. 2012).  In a coercive action, a state entity initiates an enforcement action against a citizen, who does not have a choice but to participate in the state action.  N.Y. State Corr. Officers, 2012 WL 6019572, at *14.  The typical Younger doctrine scenario involves a citizen defendant in a coercive state action who subsequently files a federal action seeking to enjoin or challenge the state enforcement action.  Id.; see also Local 749 v. Ment, 945 F. Supp. 30, 34 (D. Conn. 1996) ("The Younger doctrine presumes that the federal action would interfere with ongoing state proceedings since, typically, the federal plaintiff's object in filing the federal action is either to seek an injunction against state proceedings themselves or to challenge the law applied in those proceedings.").  Thus, usually, the federal plaintiff is the state defendant.

Conversely, a remedial state action is initiated by an individual citizen seeking a remedy for perceived wrongful action by the state.  N.Y. State Corr. Officers, 2012 WL 6019572, at *14.  Such actions are outside the reach of the Younger doctrine.  See Kanciper v. Suffolk Cnty. Soc'y for the Prevention of Cruelty to Animals, Inc., __ F. Supp. 2d __, 2013 WL 673740, at *12 (E.D.N.Y. 2013) ("[T]he Younger abstention doctrine is . . . inapplicable because the parallel state proceeding at issue here is remedial, not coercive.").

This is the situation presented by the case at bar.  Here, the parallel state and federal civil actions were initiated by the same private party.  Moreover, the state action is remedial in nature as the Hurrell-Harring plaintiffs initiated a lawsuit seeking a remedy for perceived

wrongful action by the state.  Therefore abstention under <u>Younger</u> is not appropriate on these facts and the State defendants' motion to dismiss the criminal defendant class's claims on this ground will be denied.

    **5. <u>Res Judicata</u>**:  Claims by attorney class

    All defendants contend that the attorney class's claims are barred by res judicata. They argue that the Appellate Division, Fourth Department's decision in <u>Roulan v. County of Onondaga</u>[7] precludes litigation of the claims here.

    A federal court must give the same preclusive effect to a state court's order that a New York state court would.  <u>O'Connor v. Pierson</u>, 568 F.3d 64, 69 (2d Cir. 2009).  Res judicata, or claim preclusion, applies where there has been:  (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.  <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286–87 (2d Cir. 2002).  The final judgment "precludes the parties or their privies from relitigating issues that were or could have been raised in that action to support or to defend against the alleged cause of action."  <u>Proctor v. LeClaire</u>, ___ F.3d ___, 2013 WL 1760526, at *8 (2d Cir. 2013) (internal quotations omitted).

    In April 2008, plaintiff Timothy A. Roulan, an attorney then participating in the Plan, brought suit against the County and ACP asserting breach of contract and constitutional claims.  He sought a declaration that various sections of the Plan were invalid, including that the Plan's "rules and regulations are ultra vires, illegal and a nullity because, as one

---

    [7]  Since the parties briefed the instant motions, the Court of Appeals rendered a decision on the <u>Roulan</u> plaintiff's appeal of the Fourth Department's decision.  <u>Roulan</u>, N.E.2d ___, 2013 WL 1798582 (N.Y. Apr. 30, 2013) (mem.).

example, they usurped the authority of trial judges under County Law § 722 to fix assigned counsel's compensation."  Roulan, 2013 WL 1798582 (internal quotations omitted).  He also sought money damages to make up for the alleged losses he suffered because the defendants did not pay him as much as he was entitled to receive under the Plan.

        In October 2010, following multiple rounds of motions, additional discovery, and renewed motions, the Supreme Court, Onondaga County granted ACP and the County's motion for summary judgment, denied plaintiff Roulan's motion for partial summary judgment, and dismissed the complaint in its entirety.  Roulan v. Cnty. of Onondaga, No. 08-2382, 2010 WL 4383410 (N.Y. Sup. Ct. Sept. 27, 2010).

        On appeal, Roulan only sought review of the dismissal of his claim for declaratory relief.  The Appellate Division, Fourth Department affirmed the trial court's order, but modified it by denying defendants' cross motion for partial summary judgment dismissing the declaratory judgment cause of action.  The  Fourth Department reinstated that cause of action, granted plaintiff's motion for partial summary judgment on that claim, and declared the Plan valid with the exception of the provision prohibiting attorneys from representing non-incarcerated criminal defendants until there is a determination of their eligibility.  Roulan, 90 A.D.3d at 1618.  In so ruling, the Fourth Department found that the remainder of Plan was valid, including that it did not effectively deny representation to indigent criminal defendants under age twenty-one; it did not impermissibly interfere with the court's power to determine compensation; it did not improperly delay payment to assigned counsel; and it did not usurp the trial court judge's authority to assign counsel.  Id.

        On appeal, the Court of Appeals affirmed but modified the Fourth Department's order. Roulan, 2013 WL 1798582.  It found that Roulan lacked standing to challenge the provisions

of the Plan regarding the eligibility of minors to receive free legal services and also the prohibition against retained attorneys later serving the same indigent client.  Roulan, 2013 WL 1798582.  Since Roulan did not have standing to contest those issues, "the Appellate Division should not have issued any declaration as to the validity of these provisions or features of the Plan."  Id.  However, as to the determination regarding delayed representation for clients whose financial eligibility is not yet determined, the Court of Appeals left undisturbed the Fourth Department's order declaring that provision unconstitutional, noting that the respondents (the County and ACP) failed to cross-appeal from that part of the order.  Finally, the Court of Appeals found Roulan's remaining claims to be without merit, concluding that "the ACP Plan does not take away from the courts the ultimate authority to determine assigned counsel's compensation; it merely provides for a preliminary review and recommendation, which individual trial judges are free to accept or reject."  Id.

The principle of res judicata applies here.  First, the Court of Appeals rendered a final judgment on the merits on April 30, 2013.  While the Court concluded that the plaintiff in that case lacked standing to assert some of the claims relating to the rights of criminal defendants and thus did not rule on the merits with respect to those issues, it rejected Roulan's remaining challenges to the Plan and specifically found that the Plan's compensation procedures are appropriate and do not take away authority from trial court judges.  Second, the Court of Appeals is a court of competent jurisdiction.

Third, the cases involve parties in privity.  The Ziegler plaintiffs are a group of attorneys in Onondaga County, the same county where Roulan practiced law and brought suit.  As the State defendants point out, in all likelihood, if certified, the putative Ziegler class would actually include Roulan within its class membership.  Moreover, the plaintiffs in both

cases serve or served pursuant to the Plan and ACP's Handbook of Policies, Rules and Procedures and have the same legal rights with respect to claims relating to the Plan. Further, the interests involved in <u>Roulan</u> are virtually identical to those here, and the Ziegler class's interests were represented in that case.  <u>See</u> <u>Chase Manhattan Bank, N.A. v. Celotex Corp.</u>, 56 F.3d 343, 345 (2d Cir. 1995) ("Res judicata may bar non-parties to earlier litigation . . . when the interests involved in the prior litigation are virtually identical to those in later litigation.").  Finally, both cases challenge portions of the Plan and ACP's review of vouchers and compensation to attorneys.  Specifically, the challenges asserted by the attorney class here were raised in <u>Roulan</u> and rejected by the Court of Appeals.  Because all of the factors for res judicata have been satisfied, the Ziegler class is barred from relitigating their challenges to the Plan.

Accordingly, the portion of the attorney class's third claim challenging the Plan and the payment of vouchers thereunder will be dismissed.

### C.  <u>County's Motion for Judgment on the Pleadings</u>

#### 1.  <u>Failure to State a Claim</u>

The County argues plaintiffs fail to state claims of equal protection violations, retaliation, and due process violations, as well as deprivation of the right to counsel.

##### a.  <u>Retaliation</u>:  Second claim

Ziegler alleges that defendants retaliated against the attorney class for assertion of their constitutionally protected Sixth Amendment right to counsel, in violation of the First Amendment.  The County contends the amended complaint wholly lacks sufficient factual

content to draw the reasonable inference that it is liable for retaliation.[8]  Plaintiffs do not respond to this argument.

To plead a claim of retaliation, plaintiff must allege facts supporting the following elements:  "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right."  Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).  With respect to the third element, plaintiff must show that his First Amendment rights were "'actually chilled.'"  Id. (quoting Davis v. Vill. Park II Realty Co., 578 F.2d 461, 464 (2d Cir. 1978)).

Ziegler has satisfied the first element by alleging that he, and other attorneys, have complained about and opposed "the systemic constitutional violations inherent in the court system in Onondaga County."  Am. Compl. ¶ 107.  As to the second element, he alleges that "[a]ttorney bills are thus reviewed in a slow and burdensome system," id., and "defendants have conducted an unlawful, oppressive and malicious campaign to retaliate against the plaintiff for having exercised his Constitutional Right to engage in political activity in speaking out against the above described practices."  Id. ¶ 142.  He asserts that defendants retaliated by assigning him fewer cases, thus decreasing his income, and intentionally delayed the processing of his vouchers.

With respect to the third element, Ziegler has not alleged that his First Amendment rights were actually chilled.  Despite his claims that although working in excess of full-time, he is unable to earn enough so as to adequately represent his clients and earn a living; that

---

[8]  However, the County provides no law and failed to identify what facts are lacking in the amended complaint.

in order to provide adequate legal services, he must provide certain necessary services pro bono; and that defendants threatened him with dismissal from the panel for failure to pay his malpractice insurance, he has continued to serve pursuant to the Plan and continued to voice his opposition to the Plan and practices in the County.  Id. ¶¶ 95, 96, 120.  "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."  Curley, 268 F.3d at 73.

Ziegler has not pleaded enough factual allegations to raise his right to relief above the speculative level.  Therefore, the second cause of action on behalf of the attorney class will be dismissed.  To the extent the criminal defendant class asserts a claim for retaliation, that claim also fails.  The criminal defendant class has not alleged they have an interest protected by the First Amendment; rather they rely on the exercise of their Sixth Amendment right to counsel.  Further, there are no allegations that Witkowski and his fellow putative class members were retaliated against in any way.  Because the attorney class has alleged no facts to support a claim for retaliation, their second claim will be dismissed.

**b.  Due Process**:  Third claim

As previously discussed, the attorney class alleges their statutorily guaranteed payments were taken from them without due process based on the review process employed under the Plan.  The County contends this claim cannot survive a motion to dismiss because this theory of liability is completely without merit.[9]  Plaintiffs do not specifically respond to this argument.

_____

[9]  Again, the County provides no law regarding a due process claim and fails to identify what facts are lacking in the amended complaint.

Res judicata prohibits Ziegler from litigating the merits of any due process claim.  The New York Court of Appeals approved the voucher review and payment process and held that "the ACP Plan does not take away from the courts the ultimate authority to determine assigned counsel's compensation; it merely provides for a preliminary review and recommendation, which individual trial judges are free to accept or reject."  Roulan, 2013 WL 1798582.

With respect to the criminal defendant class, the amended complaint includes sparse and conclusory allegations of due process violations.  Plaintiffs allege that "[a]s a direct and proximate result of said acts, co-plaintiff Witkowski and those similarly situated have suffered, and continue to suffer, damages including, but not limited to . . . deprivation of their rights to due process in the context of their criminal actions."  Am. Compl. ¶ 139.  There are no facts alleging a property interest of which the criminal defendant class has been deprived, as required for a procedural due process claim, see e.g., Looney v. Black, 702 F.3d 701, 706 (2d Cir. 2012).  Nor has the criminal defendant class alleged conduct "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection," see Cox v. Warwick Valley Cent. School Dist., 654 F.3d 267, 275 (2d Cir. 2011) (internal quotations omitted), to support a substantive due process claim.  Thus, any due process claim brought by the criminal defendant class will be dismissed.

**c.  Equal Protection**:  Third claim

Plaintiffs' opposition to defendants' motions argues the attorney class's equal protection rights under the Fourteenth Amendment were violated, but the amended complaint does not contain a cause of action for equal protection.  The County contends the amended

complaint fails to allege the existence of any similarly situated group that was treated differently and lacks facts to support the conclusion that any defendants are liable for retaliation.

The Equal Protection Clause of the Fourteenth Amendment requires states to treat similarly situated individuals equally.  To adequately allege an equal protection violation, Ziegler must establish he was treated differently than other similarly-situated attorneys "as a result of intentional or purposeful discrimination."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).  The amended complaint lacks any facts to suggest that the attorney class was treated differently than other similarly-situated attorneys as a result of intentional or purposeful discrimination.  Likewise, the criminal defendant class has not alleged that they were treated differently than other similarly-situated criminal defendants as a result of intentional or purposeful discrimination.  To the extent any plaintiffs attempt to assert an equal protection claim, that claim will be dismissed.

   d.  **Right to Counsel**:  First claim by criminal defendant class

The criminal defendant class alleges that the Plan and County-instituted arraignment procedures deprive them of their Sixth Amendment right to counsel.  The County argues Witkowski's claims of deprivation of counsel are without merit because the complaint lacks factual content to determine whether there was in fact a Sixth Amendment violation.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "The right attaches at the initiation of adversary judicial proceedings . . . and extends to all critical stages of a criminal prosecution."  United States v. Rommy, 506 F.3d 108, 135 (2d Cir. 2007) (internal quotations and citations omitted).  "[W]hat makes a stage critical is what

shows the need for counsel's presence."  Rothgery v. Gillespie Cnty., Tex., 554 U.S. 191, 212, 128 S. Ct. 2578, 2591 (2008).  The New York Court of Appeals has held that arraignment, which routinely affects a defendant's liberty and ability to defend against the charges, is a critical stage of a criminal proceeding for purposes of the right to counsel, even if a guilty plea is not elicited at the arraignment.  Hurrell-Harring, 15 N.Y.3d at 20–21.  In Hurrell-Harring, the specific plaintiffs averred that they were altogether without representation at critical stages of the proceedings.  Id. at 19–20.  The Court found that plaintiffs stated a claim for the constructive denial of the right to counsel.

By contrast, plaintiffs here broadly allege that "Onondaga Count [sic] justice courts conduct arraignment proceedings without benefit of counsel at all."  Am. Compl. ¶ 74.  This blanket allegation lacks facts to raise plaintiffs' right to relief above the speculative level as there is no allegation that plaintiff Witkowski was without counsel at his arraignment. Witkowski alleges that he went for days without counsel during his period of incarceration for New York State charges.  Id. ¶ 126.  While this fact could certainly give rise to a Sixth Amendment violation, he fails to allege factual content that would allow the reasonable inference to be drawn that any of the defendants are liable for the alleged violation. Witkowski includes no facts as to when the deprivation occurred or who caused it.

Dismissal of the criminal defendant class's first cause of action is appropriate because they have failed to provide some factual basis for the allegations that support the elements of a Sixth Amendment violation.

### 2. **Failure to Name a Necessary Party**:  Fourth claim

Finally, the County urges the breach of contract claim must be dismissed because plaintiffs failed to name ACP, a necessary party to the contract.  The County contends ACP

is a necessary party under Federal Rule of Civil Procedure 19(a), and is indispensable according to Rule 19(b), requiring dismissal of the breach of contract claim. Plaintiffs argue ACP is not a necessary party because under the applicable state law, they are not mentioned as having a function in the administration of the Plan. Rather, the Plan is a County plan and the County has merely delegated its authority to carry out its functions.

There is no need to determine whether ACP is a necessary party because plaintiffs fail to state a claim for which relief can be granted. To state a claim for breach of contract under New York law, a plaintiff must adequately allege each of the following elements: "'(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" Landmark Ventures, Inc. v. Wave Sys. Corp., No. 12–3634–CV, 2013 WL 909184, at *1 (2d Cir. Mar. 12, 2013) (summary order) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)).

Plaintiffs have failed to make any allegations regarding the second element—that Ziegler and the other attorneys adequately performed their own obligations under the contract. Moreover, the allegations regarding the third element—that defendants breached the contract—are sparse and conclusory at best. Ziegler alleges "payments for his services have been regularly and excessively delayed," Am. Compl. ¶ 94, yet asserts that "Onondaga County has specifically reserved the right via contract not to pay at all until/unless money becomes available," id. ¶ 117. It is unclear if the alleged breach is defendants' failure to pay under the Plan or some other conduct. Ziegler further alleges "[t]he conduct of defendants constitutes a breach of contract and statutory obligations," id. ¶ 148, and "said contract, as it is constitutionally flawed, contrary to law and public policy is a legal nullity," id. ¶ 149.

These allegations are no more than mere conclusory statements and do not present

sufficient factual matter to state a plausible claim for relief.  Assuming the Plan was a valid

contract between the parties, the attorney class fails to identify any services it performed for

which it was not paid for, particularly since plaintiffs concede "Onondaga County has

specifically reserved the right via contract not to pay at all until/unless money becomes

available, id. ¶ 117.  The amended complaint therefore fails to allege a breach of contract,

and the fourth claim will be dismissed.

### D.  Access to the Courts

Finally, the amended complaint alleges that plaintiffs have suffered, and continue to

suffer damages, including but not limited to deprivations of "equal and Constitutionally

adequate access to the court system."  Am. Compl. ¶¶ 138, 139, 143, 146, 150.  To the

extent plaintiffs assert a claim for denial of access to the court system, that claim is

insufficiently pleaded.

The Constitution guarantees prisoners meaningful access to the courts.  See Lewis v.

Casey, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180 (1996); Bounds v. Smith, 430 U.S. 817,

828, 97 S. Ct. 1491, 1498 (1977).  To state a claim for denial of access to the courts, a

plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant

acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury.  DeMeo

v. Kean, 754 F. Supp. 2d 435, 445 (N.D.N.Y. 2010).  To establish an "actual injury," plaintiff

must show that "the defendant's conduct frustrated the plaintiff's efforts to pursue a

nonfrivolous claim."  Collins v. Goord, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008).  "To satisfy

the requirement that the underlying claim not be frivolous, a plaintiff must describe the claim

well enough for the court to determine whether the claim had an arguable basis in either law

or fact." Rosario v. Fischer, No. 11 Civ 4617, 2012 WL 4044901, at *7 (S.D.N.Y. Aug. 28, 2012) Report-Rec adopted by 2012 WL 6681695 (S.D.N.Y. Dec. 20, 2012).

The amended complaint lacks any facts to support these elements.[10]  Instead, plaintiffs merely allege in conclusory fashion that they have suffered, and continue to suffer, damages including, but not limited to deprivations of "equal and Constitutionally adequate access to the court system."  Am. Compl. ¶¶ 138, 139, 143, 146, 150.  There are absolutely no allegations that defendants' conduct frustrated plaintiffs' efforts to pursue non-frivolous claims.  To the contrary, the Witkowski plaintiffs have already litigated their criminal matters, and there is no mention of further attempts to access the court or petition for redress. The bare allegations that plaintiffs were deprived of their right to access the court system do not raise plaintiffs' right to relief above a speculative level.  Thus, to the extent that plaintiffs assert a denial of access to the courts claim, that claim will be dismissed.

## IV.  CONCLUSION

The State and OCA are entitled to Eleventh Amendment immunity, and all claims against them will be dismissed.  All claims against Judge Tormey in his official capacity for money damages will also be dismissed as they are barred by the Eleventh Amendment. Further, any claims for prospective injunctive relief from Judge Tormey in his individual and official capacities will be dismissed based on judicial immunity.

The first cause of action brought by the attorney class for deprivation of the Sixth Amendment right to counsel will be dismissed as Ziegler and those similarly situated do not have standing to assert a Sixth Amendment violation on behalf of their indigent clients.  The

---

[10]  It is questionable whether the attorney class would even have standing to bring such a claim.

attorney class's third claim, to the extent it challenges the Plan and the payment of vouchers thereunder, will be dismissed because it is barred by res judicata.

Next, the second cause of action for retaliation and the third cause of action for equal protection and due process violations will also be dismissed because both the attorney class and the criminal defendant class fail to allege enough facts to state claims that are plausible on their face.  Morever, the first claim for the deprivation of the right to counsel, brought by the criminal defendant class, will be dismissed because plaintiffs have not alleged facts specific to them.  Lastly with respect to the County's motion, there is no need to determine whether ACP is an indispensable party because plaintiffs fail to allege facts supporting the elements of a contract claim and thus the fourth cause of action will be dismissed.

Finally, to the extent plaintiffs attempt to allege a denial of access to the courts claim, they fail to state a claim.  The parties' remaining arguments have been considered and are without merit.

Therefore, it is

ORDERED that

1.  Defendants State of New York, the Office of Court Administration of the Unified Court System, and Hon. James Tormey's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is GRANTED:

(a) All claims against the State of New York and the Office of Court Administration of the Unified Court System are DISMISSED;

(b) All claims against Hon. James Tormey in his official capacity for money damages and all claims against him for prospective injunctive relief in his individual and official capacities are DISMISSED;

(c) The FIRST claim for deprivation of the Sixth Amendment right to counsel brought by the attorney class is DISMISSED; and

(d) The THIRD claim brought by the attorney class, challenging the Plan and the payment thereunder, is DISMISSED;

2.  Defendant County of Onondaga's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is GRANTED:

(a) The FIRST claim for deprivation of the Sixth Amendment right to counsel brought by the criminal defendant class is DISMISSED;

(b) The SECOND claim alleging retaliation on behalf of the attorney class and the criminal defendant class is DISMISSED;

(c) The THIRD claim alleging equal protection and due process violations on behalf of the attorney class and the criminal defendant class is DISMISSED; and

(d) The FOURTH claim for breach of contract brought by the attorney class is DISMISSED;

3.  Any denial of access to the courts claim is DISMISSED; and

4.  The amended complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  June 6, 2013
        Utica, New York.

- 35 -